IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

HELEN QUIÑONES DE JESÚS

    Debtor

CASE NO. 20-00112 ESL

CHAPTER 13

P.R. ELECTRIC POWER
AUTHORITY

    Plaintiff

vs.

HELEN QUIÑONES DE JESÚS

    Defendant

ADV. PROC. 20-00076

FILED & ENTERED 04/08/2022

### **OPINION AND ORDER**

This adversary proceeding is before the court upon the *Motion for Judgment on the Pleadings* filed by the Debtor/Defendant on September 14, 2021 (Docket No. 43), the opposition filed by plaintiff on November 3, 2021 (dkt. #55), and the defendant's response filed on January 18, 2022 (dkt. #64).

Debtor/Defendant requests that the Plaintiff's Complaint be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(c) for failure to state a claim upon which relief may be granted under 11 U.S.C. §§523(a)(2), (4), (6) and (7). Defendant also states that a discharge granted under 11 U.S.C. §1328(a) does not except from discharge any debt as described under 11 U.S.C. §523(a)(6) and (7). Defendant further argues that Plaintiff failed to employ the heightened pleading standard of Fed. R. Civ. P. 9(b) that is applicable to certain causes of action under the sections of the Code which constitute exceptions to discharge and relied on by the plaintiff. Defendant also requests that the Plaintiff be ordered to pay Defendant's attorney's fees pursuant

-1-

to 11 U.S.C. §523(d) because the Puerto Rico Electric Power Authority (hereinafter referred to as "PREPA") requested a determination as to the dischargeability of a consumer debt under 11 U.S.C. §§523(a)(2), (4), (6) and (7), and such proceeding is not substantially justified.

PREPA filed its opposition contending that the Complaint contains a short and plain statement of the claim showing that it is entitled to relief and gives Defendant fair notice of what the claim is and the grounds upon which it rests, as required by Fed. R. Civ. P. 8(a)(2). PREPA alleges that it does not have to meet the heightened pleading standard of Fed. R. Civ. P. 9(b) required in fraud cases. PREPA contends that at this procedural stage, it only needs to satisfy the requirements of the general rules of pleading established by the Fed. R. Civ. P. 8(a)(2) and is not bound to prove its case. The Plaintiff argues that it would be premature to dismiss PREPA's Complaint on the grounds that a nondischargeable debt under §523(a)(6) and (7) could eventually be discharged after the successful completion of Defendant's chapter 13 case because such statement will only be applicable if Defendant is eventually granted a full compliance discharge in her chapter 13 bankruptcy case. As to the attorney fees, PREPA states that section 523(d) applies exclusively in circumstances where "a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2)" of 11 U.S.C. §523.

The Debtor/Defendant filed a response restating the argument that complaints to except debt from discharge on false pretenses, false representation, or actual fraud theory are subject to the heightened federal pleading standard for allegations of fraud.

For the reasons stated below, the Court grants in part and denies in part the *Motion for Judgment on the Pleadings* filed by the Debtor/Defendant.

**Jurisdiction**

This court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (b)(2)(I). Venue of this proceeding is proper under 28 U.S.C. §§ 1408 and 1409.

**Procedural Background**

The Debtor filed a bankruptcy petition under Chapter 13 of the Bankruptcy Code on January 15, 2020 (lead case, No. 20-00112, Docket No. 1). The Debtor listed PREPA's claim in schedule E/F (Creditors Who Have Unsecured Claims) as a disputed claim in the amount of $40,648.52. The Debtor disclosed that the claim was disputed as to: (i) the correctness of the claim amount; (ii) that the creditor is the actual owner of a credit application signed by the Debtor; and (iii) as to the amount of any type of fees or charges added (Lead Case 20-00112, Docket No. 11, pg. 13). On February 20, 2020, PREPA filed proof of claim 3-1 as an unsecured claim in the amount of $40,648.52. On May 28, 2020, PREPA filed an amended proof of claim 3-2 disclosing that of the $40,648.52 of the claim, the amount of $219.80 was secured as an administrative expense pursuant to an Order at Docket No. 28.

On June 24, 2020, the Debtor filed an amended Statement of Financial Affairs for Individual disclosing in line item #9 a pending administrative proceeding before the adjudicative body of PREPA, which was filed on October 10, 2019, objecting to the charges based on improper use ("uso indebido"). The Debtor informed that the case had not been assigned a number by the adjudicative body of PREPA. (Lead Case 20-00112, Docket No. 40, pg. 4). Also, on June 24, 2020, the Debtor submitted an *Amended Plan* and the same was confirmed on August 20, 2020 (Lead Case, Docket Nos. 41 & 63). The confirmed plan proposes in ¶4.4 to pay PREPA the amount of $219.80 as a priority claim.

On June 4, 2020, PREPA filed the instant adversary proceeding against the Debtor requesting the court to determine that the Debtor's debt with PREPA in the amount of $39,571.14 is not a dischargeable debt pursuant to 11 U.S.C. §§523(a)(2), (4), (6) and (7) because it is a debt for property and/or services obtained by Debtor through false pretenses, a false representation, or actual fraud and/or a debt that resulted from Debtor causing willful and malicious injury to PREPA and PREPA's property and/or result of Debtor committing larceny and illegally appropriating herself of PREPA's electricity, and/or a debt for a fine, administrative charge, or penalty assessed by PREPA to Debtor and payable to PREPA, that is not a tax penalty, and that serves as a punitive and/or rehabilitative governmental aim, to wit, to discourage ICEE ("irregularidades en el consumo de energía eléctrica," irregularities in the usage/consumption of electric power) practices by PREPA's customers.

PREPA alleges that its investigation of the electrical facilities of the Property revealed that PREPA's meters and/or electrical facilities had been illegally bypassed, intervened, tampered with and/or manipulated in such a way that the actual amount of electric power being consumed was not properly registered, therefore causing the meter to register a reduced amount of electricity consumption. As a result of the ICEE related to the Property, PREPA determined that $37,498.09 worth of electricity had been consumed without having been registered by the meter. PREPA also alleges that Debtor's actions regarding PREPA's meter and electrical facilities are not only illegal but also violate PREPA's General Terms and Conditions for the Supply of Electric Energy (the "GTCs") and are a breach of Debtor's representations to PREPA that she was going to comply with the GTCs. (Docket No. 1, pg.4). On July 24, 2020, the Debtor filed a *Motion for Extension of Time to Respond to Complaint or File Another Responsive Pleading* and the same was granted on July 27, 2020. (Docket Nos. 12 & 13).

On October 16, 2020, the parties filed a *Joint Preliminary Pretrial Report* (Docket No. 21). On October 23, 2020, the preliminary pre-trial hearing was held. Upon the parties' consent, the automatic stay is lifted to allow debtor and PREPA to conclude administrative proceedings related to subject case in case number Q-038-02019-0299. (Docket No. 22). The parties submitted the following uncontested facts in the joint pretrial report:

1. PREPA is a governmental unit of the Commonwealth of Puerto Rico and a public corporation with its main offices located in San Juan, Puerto Rico. PREPA's mailing address is P.O. Box 363928, San Juan, P.R. 00936-3928. PREPA's telephone number is 787-521-4448. PREPA's fax number is 787-521-4440.

2. Helen Quiñones De Jesús ("Debtor" and/or "Defendant") is a natural person and the Debtor in the bankruptcy case of caption. Debtor's physical address is C 7 Blq A 16 3ra Ext Monte Brisas Fajardo, PR 00738, and her postal address is P.O. Box 1976, Fajardo, P.R. 00738-1976.

3. PREPA was the supplier of electricity to a property owned by Debtor located at Ext Monte Brisas A-16 Calle 7, Fajardo, PR 00738 (the "Property"). PREPA is a creditor of Debtor.

4. Prior to the filing of Defendant's bankruptcy petition, PREPA delivered a letter to Defendant in which it alleged to have detected irregularities in the consumption of electric power ("irregularidades en el consumo de energía eléctrica" or "ICEE" for its Spanish acronym) under account #5926381000 in Defendant's name and which corresponds to the Property. In such letter, PREPA alleged that an investigation of the electrical facilities of the Defendant's Property revealed that PREPA's meters and/or electrical facilities had been tampered with and/or manipulated in such a way that the actual amount of electric power being consumed was not properly registered.

5. Prior to the filing of the above captioned bankruptcy petition, an employee of PREPA (Metro Region Supervisor) determined that a certain amount of electricity was consumed by the Defendant without being properly registered by the electric meter that was installed in her Property, and that charges and penalties applied.

6. On September 18, 2019, Debtor met with PREPA to discuss the ICEE charges. At the end of the meeting, PREPA handed Debtor a second letter, detailing the charges for the ICEE and the remedies she had available if she wanted to contest the charges.

7. On October 10th, 2019 Debtor filed an administrative review and/or objection of the ICEE charges and allegations before PREPA's adjudicative body. Its case number is Q-038-2019-0299.

8. On January 15, 2020, Debtor filed her bankruptcy petition. In schedule E/F of her bankruptcy petition, Debtor listed her debt with PREPA for $40,648.52

under account #5926381000 as a disputed general unsecured debt of Debtor's with PREPA. See Dkt No. 11, p. 2, Case No. 20-00112. The amount of $40,648.52 owed under account #5926381000 included the $39,571.14 for the ICEE charges.

On September 14, 2021, the Defendant filed the *Motion for Judgment on the Pleadings,* which is the subject of this opinion and order (Docket No. 43).

On September 17, 2021, PREPA filed a *Motion Requesting to Extend or Stay Discovery* and the same was granted on September 21, 2021. The discovery period is for an additional sixty (60) days after PREPA's administrative body adjudicates the administrative review proceedings related to the claims in this case. (Docket No. 44 & 45). On October 14, 2021, PREPA filed a *Motion for Extension of Time to File an Opposition to Defendant's Motion for Judgment on the Pleadings (Dkt#43)* and the same was granted on October 15, 2021 (Docket Nos. 52 & 53). On November 3, 2021, PREPA filed an *Opposition to Defendant's 'Motion for Judgment on the Pleadings' (Dkt. 43)* (Docket No. 55). On December 6, 2021, the Defendant filed a *Motion Requesting Extension of Time to Reply to Plaintiff's Opposition* and the same was granted on December 7, 2021. (Docket Nos. 58 & 59). On December 27, 2021, the Defendant filed a *Motion Requesting Final Extension of Time to Reply to Plaintiff's Opposition* and the same was granted on December 29, 2021. (Docket Nos. 61 & 62). On January 18, 2022, the Defendant filed a *Response to Plaintiff's Opposition to Defendant's Motion for Judgment on the Pleadings (DOC. #55).* (Docket No. 64).

The Court notes that, as of this date, the parties have not informed the status of the pending administrative review proceeding before the adjudicate body of PREPA, which is directly related to the claims in this adversary proceeding. The administrative proceeding was filed on October 10, 2019.

**Issues**

The first legal issue that the court must determine is whether the complaint may be dismissed for failure to sufficiently allege all the elements necessary to support a claim under 11 U.S.C. §§523(a)(2) and (a)(4) and for failing to employ the heightened pleading standard under Fed. R. Civ. P. 9(b) that is applicable to certain causes of action under these sections of the Code. The court must also determine whether the nondischargeability of debts pursuant to 11 U.S.C. §§523(a)(6) and (a)(7) may be claimed in a chapter 13 case despite the fact that these debts are dischargeable in a chapter 13 case upon completion of plan payments pursuant to 11 U.S.C. §§1328(a)(2) and 523(a). The court will also determine if an award of attorney's fees and costs incurred in defending this adversary proceeding is warranted pursuant to 11 U.S.C. §523(d) as the creditor allegedly requested the determination as to the dischargeability of a consumer debt under 11 U.S.C. §§523(a)(2), (4), (6) and (7) and such proceeding was not substantially justified.

**Complaint Factual Pleadings**

The Plaintiff pleads the following facts in its Complaint:

7. Prior to the filing of Debtor bankruptcy petition, PREPA detected irregularities in the consumption of electric power ("irregularidades en el consumo de energía eléctrica" or "ICEE" for its Spanish acronym) under account #5926381000 in Debtor's name and which corresponds to the Property.

8. PREPA's investigation of the electrical facilities of the Property revealed that PREPA's meters and/or electrical facilities had been illegally bypassed, intervened, tampered with and/or manipulated in such a way that the actual amount of electric power being consumed was not properly registered, therefore causing the meter to register a reduced amount of electricity consumption.

9. As a result of the ICEE related to the Property, PREPA determined that $37,498.09 worth of electricity had been consumed without having been registered by the meter.

14. The amount of $37,498.09 owed by Debtor to PREPA is the result of Debtor having illegally intervened or tampered with and/or manipulated PREPA's meter and electric service facilities at Debtor's property.

-7-

15. Debtor's actions with regards to PREPA's meter and electrical facilities are not only illegal but also violate PREPA's General Terms and Conditions for the Supply of Electric Energy (the "GTCs") and are a breach of Debtor's representations to PREPA that she was going to comply with the GTCs.

16. Had PREPA known that Debtor's representations that she was going to comply with the GTCs were false and that Debtor was not going to comply with the GTCs and was going to break the law by bypassing, tampering, intervening, or manipulating PREPA's meter and electrical facilities, PREPA would not have supplied electricity to Debtor and/or her property. Therefore, Debtor's debt with PREPA for $37,498.09 is a result of Debtor's obtaining PREPA's property through false pretenses and false representations."

17. By bypassing, tampering, intervening, or manipulating PREPA's meters and electrical facilities, Debtor willfully and maliciously caused injury to PREPA and to PREPA's property, in the amount of $37,498.09. Said debt is also the result of Debtor committing larceny and illegally appropriating herself of PREPA's property, to wit, the electricity supplied by PREPA to Debtor and/or Debtor's property.

18. Debtor additionally owes PREPA $573.05 in administrative charges assessed by PREPA as a result of Debtor having illegally bypassed, intervened, tampered with and/or manipulated PREPA's meter or electrical facilities. The amount in administrative charges is not compensation for PREPA's actual pecuniary loss but rather serves a punitive and/or rehabilitative governmental aim.

1[9]. Debtor's debt with PREPA for the total of $39,571.14 is not dischargeable pursuant to 11 U.S.C. §§ 523(a)(2), (4), (6), and (7), as it is a debt for property and/or services obtained by Debtor through false pretenses, a false representation, or actual fraud and/or it is a debt that resulted from Debtor causing willful and malicious injury to PREPA and PREPA's property and/or a result of Debtor committing larceny and illegally appropriating herself of PREPA's electricity, and/or a debt for a fine, administrative charge, or penalty assessed by PREPA to Debtor payable to PREPA and for PREPA's benefit that is not compensation for PREPA's actual pecuniary loss and that is not a tax penalty and that serve a punitive and/or rehabilitative governmental aim, to wit, to discourage ICEE practices by PREPA's customers.

### **Applicable Law & Analysis**

### **Fed. R. Civ. P. 12(c)**

Fed. R. Civ. P. 12(c) provides that, "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) bears a strong resemblance to a motion to dismiss under Fed. R. Civ. P. 12(b)(6), and these two types of motions are generally afforded the same treatment. See

Kando v. R.I. State Bd. of Elections, 880 F. 3d 53, 58 (1st Cir. 2018); Aponte Torres v. Univ. of P.R., 445 F. 3d 50, 54 (1st Cir. 2006). "In fact, any distinction between them is merely semantic because the same standard applies to motions made under either subsection. And, Rule 12(h)(2) expressly allows the Rule 12(b)(6) motion to be made by motion for judgment on the pleadings." 2 Moore's Federal Practice - Civil § 12.38 (2021); See also: Downing v. Globe Direct LLC, 682 F.3d 18, 22 (1st Cir. 2012). A Rule 12(c) motion, unlike a Rule 12(b)(6) motion, implicates the pleadings as a whole, meaning it is based on the factual allegations in the complaint and answer. See NEPSK, Inc. v. Town of Houlton, 283 F. 3d 1, 8 (1st Cir. 2002). Consequently, we take the well-pleaded facts and the reasonable inferences therefrom in the light most favorable to the nonmovant (here, the plaintiff). See R.G. Fin. Corp. v. Vergara-Nuñez, 446 F. 3d 178, 182 (1st Cir. 2006). In addition, our review may include facts drawn from documents "fairly incorporated" in the pleadings and "facts susceptible to judicial notice." Id. Withal, any new facts contained in the answer, to which no responsive pleading by the plaintiff is required, are deemed denied. See Id. "There is no resolution of contested facts in connection with a Rule 12(c) motion: a court may enter judgment on the pleadings only if the properly considered facts conclusively establish the movant's point." Id. citing Rivera Gomez v. De Castro, 843 F. 2d 631, 635 (1st Cir. 1988). The same standard is used for motions to dismiss under Rule 12(b)(6) and motions for judgment on the pleadings under Rule 12(c).

**Standard Motion to Dismiss Under Rule 12(b)(6)**

In deciding a motion under Rule 12(b)(6), made applicable to adversary proceedings through Bankruptcy Rule 7012(b), the court must determine whether a complaint states a plausible claim. "The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to assess the legal feasibility of a complaint, not to weigh the evidence which the plaintiff offers or intends to offer." Lugo Alejandro v. Betancourt (In re Betancourt), 2021 Bankr. LEXIS 298 (Bankr.

D.P.R. Feb. 8, 2021); Vélez Arcay v. Banco Santander de P.R. (In re Vélez Arcay), 499 B.R. 225, 230 (Bankr. D.P.R. 2013), citing Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2nd Cir.1984); Citibank, N.A. v. K-H Corp., 745 F. Supp. 899, 902 (S.D.N.Y. 1990). The purpose of a motion to dismiss for failure to state a claim is to test the sufficiency of the complaint and not to resolve factual controversies. Generally, "naked assertions of wrongdoing are insufficient to state a claim for relief. In re Douglas, 623 B.R. 715, 723 (Bankr. D. Md. 2020).

Fed. R. Civ. P. 8(a)(2), applicable to adversary proceedings through Fed. R. Bankr. P. 7008, mandates complaints to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "Although detailed factual allegations are not required, the Rule does call for sufficient factual matter". Surita-Acosta v. Reparto Saman Inc. (In re Surita Acosta), 464 B.R. 86, 90 (Bankr. D.P.R. 2012). Therefore, to survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, accepted as true, "state[s] a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. at 556. The Twombly standard was further developed in Ashcroft v. Iqbal, 556 U.S. 622 (2009), advising lower courts that "determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft, 556 U.S. at 679. "In keeping with these principles, a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement to relief." Id. at 679. In sum, allegations in a complaint cannot be speculative and must cross "the line between the conclusory and the factual". Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir. 2011). "[A]n adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 11 (1st Cir. 2011).

In Schatz v. Republican State Leadership Committee, 669 F.3d 50, 55 (1st Cir. 2012), the U.S. Court of Appeals for the First Circuit (the "First Circuit") established a two-step standard for motions to dismiss under Fed. R. Civ. P. 12(b)(6). Step one: isolate legal conclusions. Step two: take the complaint's well-pleaded (non-conclusory) allegations as true, drawing all reasonable inferences in favor of the plaintiff and determine if they plausibly narrate a claim for relief. Also see Pérez v. Rivera (In re Pérez), 2013 WL 1405747, 2013 Bankr. LEXIS 1561 (Bankr. D.P.R. 2013); Zavatsky v. O'Brien, 902 F. Supp. 2d 135, 140 (D. Mass. 2012).

"Simply because the court is hesitant to dismiss a claim in the early sta[g]es of litigation, however, does not mean that there are not circumstances where the court can and should act. Rule 12(b)(6) weeds out those allegations that, even with further factual development, will never grow into sustainable claims under the law." Arruda v. Sears, Roebuck & Co., 273 B.R. 332, 340 (D.R.I. 2002). As the First Circuit has stated, "in the menagerie of the Civil Rules, the tiger patrolling the courthouse gates is rather tame, but 'not entirely … toothless.'" Correa v. Arrillaga, 903 F.2d 49, 52 (1st Cir. 1990), quoting Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989).

Consideration of a motion to dismiss requires the court to assume the truth of all well-plead facts and give the benefit of all reasonable inferences therefrom. A complaint that states a claim plausible on its face survives a motion to dismiss. Banco Santander P.R. v. P.R. Hosp. Supply, Inc. (In re P.R. Hosp. Supply, Inc.), 617 B.R. 181, 191 (Bankr. D.P.R. 2020). A claim

has plausibility and may survive a motion to dismiss when the complaint pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged in the complaint. In re Landes, 627 B.R. 144 (Bankr. E.D. Cal. 2021); In re Estrategias en Valores, S.A., 628 B.R. 722 (Bankr. S.D. Fla. 2021); In re Integrity Graphics, Inc., 623 B.R. 21 (Bankr. D. Conn. 2020); In re McLain, 604 B.R. 108 (Bankr. D. Mass. 2019). The factual allegations in the complaint must be enough to raise a right to relief above the speculative level. Houck v. Substitute Trustee Services, Inc., 791 F.3d 473 (4th Cir. 2015).

**Fed. R. Civ. P. 9(b)**

The pleading requirements for fraud are found in Fed. R. Civ. P. 9(b), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7009. Fed. R. Civ. P. 9(b) provides, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." See also Honey Dew Assocs. v. Monaco (In re Monaco), 347 B.R. 454, 457-458 (Bankr. D. Mass. 2006); Ducharme Estates, Ltd. v. Kappeler (In re Kappeler), 2014 Bankr. LEXIS 392, *12 (Bankr. D. Mass. Jan. 30, 2014). "Although '[c]ourts generally evaluate averments of fraud in the bankruptcy context more liberally than in other civil actions charging fraud,' the allegations still must be specific enough to ensure a defendant is protected from unfair surprise, strike suits and damage." In re Monaco, 347 B.R. at 358 citing (Nisselson v. Ford Motor Co. (In re Monahan Ford Corp.), 340 B.R. 1, 21-22 (Bankr. E.D. N.Y. 2006)).

The purposes of the pleading requirement are: (i) to protect a defending party's reputation from harm; (ii) to minimize strike suits; and (iii) to provide detailed notice of a fraud claim to a defending party. 2 Moore's Federal Practice-Civil §9.03. "Although a purpose of Rule 9(b) is to provide detailed notice of the circumstances constituting fraud, not every alleged misrepresentation need appear in the pleadings. A claimant is required to set forth only the major

-12-

misrepresentations or omissions on which the fraud claims are based." Id. "The requirements of particularity under Rule 9(b) may differ with the facts of each case. However, the reference to "circumstances constituting fraud" usually requires the claimant to allege: (i) the identity of the person who made the fraudulent statement; (ii) the time of the misrepresentation; (iii) the place of the misrepresentation; (iv) the content of the misrepresentation; (v) the method by which the misrepresentation was communicated; (vi) the persons or entities to whom the misrepresentation was communicated; and (vii) the injury resulting from reliance on the misrepresentation." Id.; See also; Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 15 (1st Cir. 2004) (the particularity requirement is satisfied by averments "of the who, what, where, and when of the allegedly false or fraudulent representation").

"Nevertheless, plaintiffs are not absolutely required to plead the specific date, place, or time of each of the fraudulent acts, provided they use some alternative means of injecting precision and some measure of substantiation into their allegations of fraud." Id. "Because the complexity and other circumstances of each case will determine the amount of specificity required, misrepresentations that are numerous and occur over extended periods of time may be alleged with somewhat less specificity. In such cases, it would be impractical to detail every instance of fraudulent conduct. A complaint may be sufficient if it pleads a fraudulent scheme with particularity along with representative examples showing fraudulent conduct. Moreover, Rule 9 must be read together with Rule 8, which requires that pleadings be 'simple, concise, and direct.' Excessive pleading of multiple instances of fraud might violate Rule 8." Id.

It is important to consider that: "[f]or deficiencies under Rule 9(b), leave to amend is often given, at least for plausible claims." Sauer Inc. v. Lawson (In re Lawson), 791 F. 3d 214, 226 (1st Cir. 2015) citing (N. Am. Catholic. Educ. Programming Found., Inc. v. Cardinale, 567 F. 3d 8, 16 (1st Cir. 2009); citing also New Eng. Data Servs., Inc. v. Becher, 829 F. 2d 286, 292 (1st Cir.

-13-

1987) (noting that the policy behind Rule 9(b) -- avoiding groundless claims, damage to a defendant's reputation, and ensuring notice -- must be balanced against "the policy in favor of allowing amendments and trying cases on their merits, and against dismissals which would deny plaintiffs their day in court"); cf. 11 U.S.C. § 523(d) (awarding costs and attorneys' fees for unsuccessful adversary proceedings under § 523(a)(2)(A) that are frivolous or brought in bad faith))."

### 11 U.S.C. §§523(a)(2)(A)

The Debtor/Defendant in its *Motion for Judgment on the Pleadings* argues that PREPA broadly alleges a cause of action under 11 U.S.C. §523(a)(2) and fails to specify under which of the three subsections it is pursuing its claim. According to the Debtor/Defendant, the pleadings in PREPA's complaint allege that, "…Debtor's debt with PREPA for $37,498.09 is a result of Debtor's obtaining PREPA's property through false pretenses and false representations." PREPA in the complaint also pleads that the debt is not dischargeable because it is a debt for property and/or services obtained by Debtor through false pretenses, a false representation, or actual fraud..." (Docket No. 1, pg. 6, par. 16 & 17[1]). Based on the above, Debtor/Defendant concludes that PREPA's pleadings fall under 11 U.S.C. §523(a)(2)(A).

> Section 523(a)(2)(A) provides in pertinent part:
> "(a) A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."11 U.S.C. §523(a)(2)(A).

---

[1] The Plaintiff numbered this paragraph number 17, but it should be number 19.

-14-

The exception to discharge in section 523(a)(2) is premised on the "basic policy animating the Code of affording relief only to an "honest but unfortunate debtor."" Cohen v. de la Cruz, 523 U.S. 213, 217-218, 118 S.Ct. 1212 (1998). A "straightforward reading of § 523(a)(2)(A) is that it prevents discharge of "any debt" respecting "money, property, services, or ... credit" that the debtor has fraudulently obtained." Id. Section 523(a)(2(A) "is best read to prohibit the discharge of any liability arising from a debtor's fraudulent acquisition of money, property, etc. . . ." Id.

A creditor seeking the nondischargeability of a debt owed to it under one of these subsections must establish by a preponderance of the evidence, each element of the asserted exception. Palmacci v. Umpierrez, 121 F.3d 781, 787-88 (1st Cir. 1997) (citing Grogan v. Garner, 498 U.S. 279, 291, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991)). The exceptions to discharge are narrowly construed as a way to uphold the key tenet of the "fresh start" policy of the Bankruptcy Code. The "[e]xceptions to discharge are narrowly construed[,] . . . and, for that reason, the claimant must show that his 'claim comes squarely within an exception enumerated in Bankruptcy Code § 523(a).'" Palmacci, 121 F.3d at 786 (quoting Century 21 Balfour Real Estate v. Menna (In re Menna), 16 F.3d 7, 9 (1st Cir. 1994)); see also McCoy v. Spigel (In re Spigel), 260 F.3d 27, 35 (1st Cir. 2001) (explaining that the narrow exceptions to discharge do not always protect the inculpable creditor). It is well-settled that whether a debt is nondischargeable pursuant to 11 U.S.C. §523 is governed by federal law. Power v. Robinson (In re Robinson), 340 B.R. 316, 330 (Bankr. E.D. Va. 2006).

"Although sharing certain elements, false pretenses, false representation, and actual fraud form 'three distinct categories of misconduct,' and by proving any of the three, the claimant will stave off discharge of a particular debt. Dewitt v. Stewart (In re Stewart), 948 F. 3d 509, 520 (1st Cir. 2020) citing (Privitera v. Curran (In re Curran), 554 B.R. 272, 284-85 (B.A.P. 1st Cir. 2016), aff'd, 855 F.3d 19 (1st Cir. 2017); see McGuinness v. Gannon (In re Gannon), 598 B.R. 72, 82-

83 (Bankr. D. Mass. 2019)).” “The purposes of the provision are to prevent a debtor from retaining the benefits of property obtained by fraudulent means and to ensure that the relief intended for honest debtors does not go to dishonest debtors. Before the exception applies, the debtor's fraud must result in a loss of property to the creditor.” Richard Levin & Henry J. Sommer, 4 Collier on Bankruptcy ¶ 523.08[1][a](16th ed. 2021).

The United States Court of Appeals for the First Circuit (“First Circuit”) discussed thoroughly the differences between false representation, false pretenses and actual fraud as it pertains to section 523(a)(2)(A). The First Circuit in In re Stewart analyzed the three different categories of misconduct as follows:

> “To make out a claim for false representation, the plaintiff must prove by a preponderance of the evidence that:
> 1) the debtor made a knowingly false representation, or one made in reckless disregard of the truth, 2) the debtor intended to deceive, 3) the debtor intended to induce the creditor to rely upon the false statement, 4) the creditor actually relied upon the false statement, 5) the creditor's reliance was justifiable, and 6) the reliance upon the false statement caused damage. Sharfarz v. Goguen (In re Goguen), 691 F.3d 62, 66 (1st Cir. 2012) (quoting In re Spigel, 260 F.3d at 32); Grogan v. Garner, 498 U.S. 279, 291, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991) (holding that standard of proof for dischargeability exceptions is by a preponderance of the  evidence). Each of the six elements constitutes a finding of fact, and failure to prove any one of them defeats the claim. Palmacci, 121 F.3d at 787-88 (citing Commerce Bank & Tr. Co. v. Burgess (In re Burgess), 955 F.2d 134, 139 (1st Cir. 1992)). “The requirements for false pretenses ‘are largely the same, except that requirement of a false representation is replaced by a requirement of a false pretense, which is an implied misrepresentation, or a false impression created by conduct of the debtor.’” Curran, 554 B.R. at 285 (quoting Meads v. Ribeiro (In re Ribeiro), Adv. No. 11-1188, 2014 Bankr. LEXIS 2576, 2014 WL 2780027, at *9 (Bankr. D. Mass. June 19, 2014)). False pretenses may “arise when the circumstances ‘imply a particular set of facts, and one party knows the facts to be otherwise’ but does not correct the counter-party's false impression.” In re Curran, 855 F.3d at 28-29 (quoting Old Republic Nat'l Title Ins. Co. v. Levasseur (**In re Levasseur), 737 F.3d 814, 818 (1st Cir. 2013))** (affirming a denial of the plaintiff's motion to amend her complaint to add claims under § 523(a)(2)(A) when she had failed to plead facts sufficient to show false pretenses or a false representation).

Actual fraud, understood in light of the common law definition found in the Restatement (Second) of Torts (Am. Law Inst. 1977), is  broader  than

-16-

misrepresentation. Sauer Inc. v. Lawson (In re Lawson), 791 F.3d 214, 219-20 (1st Cir. 2015) (holding that "actual fraud" as used in § 523(a)(2)(A) does not require a misrepresentation and includes the knowing receipt of fraudulent conveyances). It "consists of any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another." Id. at 219 (quoting 4 Collier on Bankruptcy ¶ 523.08[1][e] (A.N. Resnick & H.J. Sommer eds., 16th ed. 2015)). Actual fraud, compared to merely constructive fraud, requires wrongful intent and cannot be implied by law. Id. at 220; see Husky Int'l Elecs., Inc. v. Ritz, 136 S. Ct. 1581, 1586-87, 194 L. Ed. 2d 655 (2016)."

In re Stewart, 948 F.3d at 520-521.

Each type--actual fraud, false representations, and false pretenses requires a direct link between the alleged fraud and the creation of the debt." In re Spigel, 260. F. 3d at 32 n. 7. Section 523(a)(2)(A) includes three (3) different types of categories of misconduct. PREPA's pleadings consisting of false representations and/or false pretenses and/or actual fraud must comply with Fed. R. Civ. P. 9(b) heightened pleading standards.

The First Circuit has held that actual fraud includes fraudulent conveyances that are intended to hinder creditors, In re Lawson, 791 F.3d 214, 220 (1st Cir. 2015), understanding that actual fraud is broader than misrepresentation. This conclusion was validated by the Supreme Court in Husky Int'l Elecs., Inc. v. Ritz.

The pleadings of the complaint center on the debtor bypassing, tampering, intervening, or manipulating PREPA's meter and electrical facilities in order that the actual amount of electric power being consumed was not properly registered, therefore causing the meter to register a reduced amount of electricity consumption. Thus, reducing the amount to be paid to PREPA. These pleadings and the reasonable inferences that can be drawn from the same do state an artifice to circumvent payment to PREPA.

Considering that the electric meters were assumedly under the control of the debtor, that the same were tampered, and that the tampering resulted in reduced charges, the court finds that

-17-

plaintiff has plead sufficient facts to place the Debtor/Defendant in a position to defend herself against the imputation of fraud in the complaint.

**11 U.S.C. §523(a)(4)**

PREPA's complaint under section 523(a)(4) is premised upon the Debtor allegedly committing larceny, therefore the Court will focus on larceny for the applicable law under this section.

Section 523(a)(4) provides in pertinent part:

"(a) A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. §523(a)(4).

"The language of section 523(a)(4) relates to "fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny." The phrase "while acting in a fiduciary capacity" clearly qualifies the words "fraud or defalcation" and not "embezzlement" or "larceny." Richard Levin & Henry J. Sommer, 4 Collier on Bankruptcy ¶ 523.10[1][d] (16th ed. 2021).

"Larceny is the fraudulent and wrongful taking and carrying away of the property of another with intent to convert the property to the taker's use without the consent of the owner. As distinguished from embezzlement, the original taking of the property must be unlawful. For purposes of section 523(a)(4), a bankruptcy court is not bound by the state law definition of larceny but, rather, may follow federal common law, which defines larceny as a 'felonious taking of another's personal property with intent to convert it or deprive the owner of same.'" Id. at ¶523.10[2]. See also; Strait in re & Lamp Grp. v. Moldovan (In re Moldovan), 2021 Bankr. Lexis 3332,*28 (S.D. Ohio 2021); Nasif v. Palladino (In re Palladino), 560 B.R. 608, 628 (Bankr. D. Mass. 2016) ("[u]nder federal common law, larceny is defined as 'the unlawful taking and carrying away of someone else's property with intent to covert it or deprive the owner of the

-18-

same'"). Larceny is the "(1) wrongful taking of (2) property (3) of another (4) without the owner's consent (5) with intent to convert the property." Orumwense-Lawrence v. Osula, (In re Osula), 519 B.R. 361, 378 (Bankr. D. Mass. 2014). Larceny requires the establishment of the debtor's actual fraudulent intent in obtaining the property at issue. In re Palladino, 560 B.R. at 628(citing Barristers Abstract Corp. v. Caulfield (In re Caulfield), 192 B.R. 808, 818 (Bankr. E.D.N.Y. 1996). "Larceny is the fraudulent taking of the property of another "with intent to convert such property to the taker's use without consent of the owner." In re Graziano, 35 B.R. at 594 (emphasis added)." In re Burnham, 2021 WL 6101676 (Bankr. D Me. 2021). Fraudulent intent can be inferred from the circumstances. Philadelphia Gas Works v. Esola (In re Esola), 606 B.R. 647, 652 (Bankr. E.D. Pa. 2019) citing (DirecTV, Inc. v. Figler (In re Figler), 407 B.R. 181, 193 (Bankr. W.D. Pa. 2009). See also; Lassonde v. Stanton (In re Stanton), 2010 Bankr. LEXIS 708, *20 (Bankr. D. Mass. 2010). A creditor under section 523(a)(4) bears the burden of proving every element by a preponderance of the evidence. In re Osula, 519 B.R. at 378 citing Rutanen v. Baylis (In re Baylis), 313 F 3d 9, 17 (1st Cir. 2002) (citing Grogan v. Garner, 498 U.S. 279, 291, 111 S. Ct. 654, 112 L.Ed. 2d 755 (1991)).

A section 523(a)(4) cause of action must satisfy the heightened pleading standards of Fed. R. Civ. P. 9(b). See Am. Honda Fin. Corp. v. Ippolito (In re Ippolito), 2013 Bankr. LEXIS 866, at *22 (Bankr. E.D.N.Y. Mar. 6, 2013); Balles v. Sturgill, 2009 U.S. Dist. Lexis 30418, *12 (Bankr. DNH 2009); In re Baylis, 313 F. 3d 9, 17-19 (1st Cir. 2002).

The complaint pleadings of fact that PREPA's meters and/or electrical facilities had been illegally bypassed, intervened, tampered with and/or manipulated in such a way that the actual amount of electric power being consumed was not properly registered, therefore causing the meter to register a reduced amount of electricity consumption, meets the basic definition of larceny, that is, larceny is the fraudulent and wrongful taking and carrying away of the property of another

-19-

with intent to convert the property to the taker's (Debtor) use without the consent of the owner (PREPA).

**11 U.S.C. §§523(a)(6) and (a)(7)**

Plaintiff argues, "… that it would be premature to dismiss PREPA's Complaint on the grounds that a nondischargeable debt under 11 U.S.C. §§523(a)(6) and/or (7) could eventually be discharged after the successful completion of the Defendant's chapter 13 case because such statement will only be applicable if debtor is eventually granted a full compliance discharge in her chapter 13 bankruptcy case." (Docket No. 55, pg. 8).

Section 1328(a)(2) provides in pertinent part:

"(a) Subject to subsection (d), as soon as practicable after completion by the debtor of all payments under the plan, and in the case of a debtor who is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, after such debtor certifies that all amounts payable under such order or such statute that are due on or before the date of the certification (including amounts due before the petition was filed, but only to the extent provided for by the plan) have been paid, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt---

(2) of the kind specified in section 507(a)(8)(C) or in paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of section 523(a)." 11 U.S.C. §1328(a)(2).

Plaintiff's argument is misplaced because the regular chapter 13 discharge will discharge a debtor after the completion of payments from certain types of debts listed in section 523(a) pursuant to section 1328(a)(2). After the completion of plan payments, the debts under sections 523(a)(6) and (7) will be discharged under section 1328(a). The Court further finds that the Plaintiff's argument is premature and speculative given that there is no motion for conversion to chapter 7 in the lead bankruptcy case. Therefore, the court concludes that there is no plausible

claim for nondischargeability of debts under section 523(a)(6) and (7) in a standard chapter 13 case (as opposed to a hardship discharge under section 1328(b)).

**11 U.S.C. §523(d)**

Section 523(d) provides in pertinent part that:

(d) If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust." 11 U.S.C. §523(d).

The Bankruptcy Appellate Panel for the First Circuit in Bridgewater Credit Union v. McCarthy explained the reasoning behind the enactment of Section 523(d) as follows:

"Section 523(d) was enacted to discourage creditors from filing § 523(a)(2) complaints without first carefully reviewing the legal and factual bases for their fraud-based nondischargeability claims. ... Congress was concerned that, absent the meaningful possibility that a successful defending debtor would be awarded his or her fees and costs, unscrupulous or inconsiderate creditors might file iffy actions willy-nilly, betting that their financially strapped consumer debtors would settle to avoid defense costs. (citations omitted). Bridgewater Credit Union v. McCarthy (In re McCarthy), 243 B.R. 203, 208 (1st Cir. B.A.P. 2000).

In order to prevail on a motion for costs and attorney's fees under section 523(d), a debtor must establish the following: (i) the creditor requested a determination of the dischargeability of the debt under section 523(a)(2); (ii) the debt is a consumer debt; and (iii) the debt was discharged. Once the debtor establishes these three elements, the burden shifts to the creditor to prove either that its position was substantially justified or that special circumstances exist that would make an award of costs and attorney fees unjust. Richard Levin & Henry J. Sommer, 4 Collier on Bankruptcy ¶ 523.08[8] (16th ed. 2021). "The party attempting to prove substantial justification for its action must show that there was a reasonable basis for the facts asserted, a reasonable basis in the law for the legal theory proposed and support for the legal theory by the facts alleged." Id.

-21-

The Defendant argues that under the plain language of section 523(d) an award of costs and attorney's fees against Plaintiff is mandated under the facts and circumstances of this case. Defendant is hard pressed to find any "substantial justification" for asserting a claim that this debt was non-dischargeable, unless the Court finds specifically that Plaintiff was "substantially justified." (Docket No. 43, pg. 24).

PREPA contends that the Defendant is not entitled to attorney's fees incurred in defending the present adversary proceeding because the same was filed, "…. after carefully reviewing the legal and factual bases of PREPA's investigation of the electrical facilities at Defendant's property, which revealed that PREPA's meters and/or electrical facilities had been illegally bypassed, intervened, tampered with and/or manipulated in such a way that the actual amount of electric power being consumed was not properly registered, therefore causing the meter to register a reduced amount of electric consumption. PREPA's Complaint, as well as the discovery that has been provided to Defendant to this date, undoubtedly shows that the present case was not brought in bad faith, nor with frivolous intent, and that it is substantially justified." (Docket No. 55, pg. 9 paragraph 33).

The court agrees with PREPA's position.  In addition, as stated before, the complaints pleads sufficient facts under sections 523(a)(2)(A) and 523(a)(4). Thus, dismissal on those counts at this juncture is not warranted.

**Conclusion**

In view of the foregoing, the court finds that Plaintiff's claims pursuant to 11 U.S.C. §§523(a)(2)(A) and (4) do plead sufficient factual allegations, either direct or inferential, to state a plausible claim for relief. The Court also finds that the Plaintiff has met the heightened pleading standard of Fed. R. Civ. P. 9(b) that is required to plead these claims which are fraud based.

-22-

The Court further concludes that there is no plausible claim for relief for Plaintiff's claims under section 523(a)(6) and (7) because these claims after the completion of plan payments are discharged under section 1328(a). Therefore, the Defendant's *Motion for Judgment on the Pleadings* granted in part for Plaintiff's failure to state a plausible claim for relief pursuant to 11 U.S.C. §12(c).

The court further orders that Defendant's request that pursuant to 11 U.S.C. §523(d) be and is hereby denied, without prejudice to making the request after trial on the merits, if appropriate.

Partial Judgment will be entered dismissing Plaintiff's claims under section 523(a)(6) and (7).

Notwithstanding the above, the court hereby orders the parties to inform on the status of the administrative proceedings before PREPA, wherein the debtor is questioning the facts which serve as basis to the instant complaint, within twenty-one (21) days. The court further orders the parties to show cause why the instant adversary proceeding should not be stayed pending a final administrative decision.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 8th day of April 2022.

Enrique S. Lamoutte
United States Bankruptcy Judge

-23-